# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| **FINE AGROCHEMICALS LTD., FINE AMERICAS INC., CJB INDUSTRIES, INC., and VIVID LIFE SCIENCES, LLC,**<br><br>    Plaintiffs,<br><br>v.<br><br>**STOLLER ENTERPRISES, INC., THE STOLLER GROUP, INC., and STOLLER USA, INC.**,<br><br>    Defendants. | Case No. 7:19-CV-28 (HL) |

## ORDER

Before the Court is Defendants Stoller Enterprises, Inc., The Stoller Group, Inc., and Stoller USA, Inc.'s Motion to Transfer Venue, or Alternatively, to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Doc. 11). Defendants argue that the Court should dismiss Plaintiffs' action for declaratory judgment for lack of personal jurisdiction. Alternatively, Defendants ask the Court to transfer the case to the Southern District of Texas. Also before the Court is Plaintiffs and Counterclaim-Defendants Fine Agrochemicals Ltd., Fine Americas Inc., CJB Industries, Inc., and Vivid Life Sciences, LLC's Motion to Dismiss Stoller's First Amended Counterclaim of Indirect Infringement. (Doc. 27).[1]

---

[1] Plaintiffs' Motion to Dismiss Indirect Infringement Claims (Doc. 22) is **DENIED as moot**.

Upon careful consideration, and with the benefit of oral argument, the Court **GRANTS** Defendants' motion to transfer and transfers this case to the United States District Court for the Southern District of Texas. Based on the Court's decision to transfer the case, the Court declines to express an opinion regarding the sufficiency of Defendants' counterclaim. Plaintiffs' motion to dismiss shall remain active and transfer with the case.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Fine Agrochemicals Ltd. ("Fine Agrochemicals") is a United Kingdom corporation with a principal place of business in Worcester, United Kingdom. (Doc. 1, ¶ 6). Established in 1983, Fine Agrochemicals "is a worldwide leader in the development, manufacture, and marketing of plant growth regulators (PGRs) for the agricultural, greenhouse, ornamental, and landscape markets and is a recognized center of excellence for PGR technology." (Id. at ¶ 27). Plaintiff Fine Americas Inc. ("Fine Americas") is a Delaware Corporation with a principal place of business in Walnut Creek, California. (Id. at ¶ 7). Fine Americas Inc. was established in 2004 and "is a leading supplier of PGRs for the agricultural, green house[,] ornamental, and landscape industries." (Id. at ¶ 28).

Plaintiff CJB Industries, Inc. ("CJB"), a custom chemical manufacturer of PGR formulations, is a Georgia corporation with a principal place of business in Valdosta, Georgia. (Id. at ¶¶ 9, 29). CJB manufactures a formulation owned by

2

Fine[2] and marketed under the VIGEO™ brand. (Id. at ¶ 29). Plaintiff Vivid Life Sciences, LLC ("Vivid") is a Florida limited liability corporation with a principal place of business in Princeton, Minnesota that distributes products for the Fine entities. (Id. at ¶¶ 9, 30). Vivid distributes Fine's products, including the VIGEO™ product manufactured by CJB. (Id. at ¶ 30).

Defendant Stoller Enterprises, Inc. ("Stoller Enterprises") is a Texas corporation with a principal place of business in Houston, Texas. (Doc. 1, ¶ 10; Doc. 11-1, ¶ 3). Defendant The Stoller Group, Inc. ("The Stoller Group") is a Texas corporation with a principal place of business in Houston, Texas. (Doc. 1, ¶ 11; Doc. 11-1, ¶ 4). The Stoller Group is a holding company that wholly owns the shares of Stoller Enterprises, Inc., which operates as an independent company. (Doc. 11-1, ¶ 28). Defendant Stoller USA, Inc. ("Stoller USA") is a Texas corporation with a principal place of business in Houston, Texas. (Doc. 1, ¶ 12; Doc. 11-1, ¶ 5).

At issue in this case is U.S. Patent 10,104,883 (the "'883 Patent"), a "non-aqueous solution of plant-growth regulator(s) and polar and/or semi-polar organic solvent(s)." (Doc. 1, ¶ 31). The United States Patent and Trademark Office

---

[2] The Complaint does not specify whether the VIGEO™ formulation is owned by Fine Agrochemicals or Fine Americas. Rather, the Complaint states only that the formula is owned by Fine. However, the letter Plaintiffs' counsel sent in response to Defendants' cease-and-desist letter indicates that Fine Agrochemicals is the EPA registrant for VIGEO™ (EPA Reg. No. 62097-45-92697). (Doc. 1, ¶ 1; Doc. 11-1, p. 8).

3

issued the '883 Patent to Stoller Enterprises on October 23, 2018. (Doc. 1, ¶ 31; Doc. 11-1, ¶ 6). The '883 Patent was developed primarily by inventors Ritesh Sheth and Jerry Stoller, who both reside in Houston, Texas. (Doc. 11-1, ¶ 22). Neither The Stoller Group nor Stoller USA has any ownership interest in the '883 Patent. (Id. at ¶ 30).

On November 27, 2018, Jennifer Yancy, an Alexandria, Virginia-based patent attorney retained by Stoller Enterprises, mailed cease-and-desist letters to CJB and to Vivid.[3] (Doc. 1, ¶ 32; Doc. 1-2; Doc. 1-3; Doc. 11-1, ¶ 29). The letters identified Stoller Enterprises as the owner of the '883 Patent and alleged that the product VIGEO™ infringed the patent. (Doc. 1-2; Doc. 1-3). The letters then demanded that CJB and Vivid,

1. cease to make, use, sell and or offer for sale the VIGEO™ product;
2. destroy any and all VIGEO™ products in your possession and control;
3. use reasonable endeavors to recover all stocks of the infringing items from purchases and destroy these stocks;
4. [p]rovide to us a written undertaking that you will refrain from making the infringing item or any other products which would infringe the Patent without our express written consent.

(Id.). In closing, the letter requested a response within ten days and emphasized that failure to respond may result in further legal remedies. (Id.).

---

[3] Until receiving correspondence from counsel for CJB and Vivid, Defendants were unaware of the relationship between CJB, Vivid, and Fine. (Doc. 11-1, ¶ 29; Doc. 11-1, p. 8).

4

Plaintiffs filed this action on February 5, 2019, seeking a declaratory judgment that (1) Plaintiffs' PGR products, including VIGEO™, (the "Relevant Products") do not infringe on any claim of the '883 Patent; (2) Plaintiffs have not infringed, have not induced others to infringe, and have not contributed to the infringement by others of any claim of the '883 Patent; and (3) the '883 Patent is unenforceable in light of inequitable conduct during the prosecution of the Patent. (Doc. 1, ¶ 1). Plaintiffs contend that the Relevant Products do not literally or under the doctrine of equivalents meet the limitation claims of the '883 Patent. (Id. at ¶ 44). Moreover, Plaintiffs allege that Defendants intentionally removed or altered data to mislead the Patent Office Examiner during the prosecution of the application that led to the issuance of the '883 Patent. (Id. at ¶¶ 67, 70-71, 73, 79, 81, 83-84). Defendants filed a counterclaim for patent infringement, alleging that Plaintiffs "have willfully and knowingly made, used, sold and/or offered for sale products embodying the patented invention that constitute infringement of the '883 Patent in violation of 35 U.S.C. § 271, et seq." (Doc. 25, ¶ 17). Defendants also assert that Plaintiffs are liable for indirect infringement "for directing activities that result in infringement, are inducing infringement, and are contributory infringers." (Id. at ¶ 38).

## II. DISCUSSION

Defendants maintain that the single cease-and-desist letter mailed to CJB in Valdosta, Georgia, without more, is insufficient to establish personal

jurisdiction in the Middle District of Georgia. In the absence of personal jurisdiction, Defendants move the Court either to dismiss the case or to transfer the action to the Southern District of Texas pursuant to 28 U.S.C. § 1631. Alternatively, Defendants ask the Court to transfer the case to Texas under 28 U.S.C. § 1406(a), to cure improper venue, or under 28 U.S.C. § 1404(a), for the convenience of the parties. Plaintiffs argue that Defendants have failed to meet the high burden of demonstrating that subjecting them to this Court's personal jurisdiction would be unreasonable and unfair. Plaintiffs further contend that venue is proper in this jurisdiction and that Defendants have not established that this forum is less convenient.

Based on the information before the Court, the Court remains doubtful that it has personal jurisdiction over Defendants as a consequence of them mailing a single cease-and-desist letter. However, Defendants have demonstrated under § 1404(a) that the Southern District of Texas is the more convenient forum for all parties involved in this lawsuit and that transfer shall serve the interests of justice shall, the Court need not undertake the personal jurisdiction analysis.

### A. Legal Standard

Section 1404(a) provides, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to

adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal quotation marks omitted). The party seeking transfer bears the burden of establishing that the proposed forum is more convenient. In re Ricoh Corp., 70 F.3d 570, 573 (11th Cir. 1989). Accordingly, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996).

The first inquiry under § 1404(a) is whether the case "might have been brought" in the proposed transfer venue. 28 U.S.C. § 1404(a). Once a court confirms that the plaintiff could have filed the action in the transferee venue, the court next examines the following factors to determine whether transfer is proper:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

**B.    Application**

Defendants move the Court to transfer this declaratory judgment action to the Southern District of Texas. It is clear, and Plaintiffs do not dispute, that this

7

case could have been brought in Texas. Each of the Defendants is incorporated in Texas and maintains a principal place of business in Texas. (Doc. 1, ¶¶ 10-12). See 28 U.S.C. § 1391(c) ("[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action commenced."); see also Bristol-Myers Squibb Co. v. Mylan Pharm. Inc., No. 17-379-LPS, 2017 WL 3980155, at *7 n.8 (D. Del. Sept. 11, 2017) ("Venue in a declaratory judgment action for patent noninfringement and invalidity is governed by the general venue statute, 28 U.S.C. § 1391(b) and (c), and not the special patent infringement venue statute.") (internal quotation marks and citation omitted). The Court, therefore, finds that this action could have been brought in the Southern District of Texas. The Court must now determine whether the Southern District of Texas is a more convenient forum than the Middle District of Georgia.

### 1. Neutral Factors

The parties agree that at least two of the nine factors are neutral: the relative means of the parties and the forum's familiarity with the governing law. (Doc. 21, p. 25; Doc. 24-1, p. 10; Doc. 33, p. 31). Thus, neither of these factors tilts the scales in favor of one forum over the other. In the Court's estimation, the location of relevant documents is also a neutral factor. In the dawn of the electronic age, "this factor is not particularly significant given the widespread use

8

of electronic document production." Polyform A.G.P. Inc. v. Airlite Plastics Co., No. 4:10-CV-43 (CDL), 2010 WL 4068603, at *2 (M.D. Ga. Oct. 15, 2010).

### 2. Factors Favoring Transfer

The following factors favor transfer: (1) the convenience of witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel unwilling witnesses; and (9) trial efficiency and the interests of justice.

The Court finds it beneficial to take the factors out of order to analyze first the locus of operative facts. Plaintiffs contend that the operative facts transpired in Valdosta, Georgia, where CJB mixes the Relevant Products. (Doc. 21, p. 22; Doc. 33, p. 36). Plaintiffs' argument appears to be based on two issues: (1) the contents of Defendants' cease-and-desist letter accusing CJB of infringement and demanding that CJB stop manufacturing the product; and (2) Defendants' compulsory counterclaim for patent infringement against CJB. While the cease-and-desist letter may have been the impetus for Plaintiffs filing their action for declaratory judgment, the accusations in the letter have no bearing on the question of whether the products produced by CJB based on a formulation created and owned by Fine infringe on the claims of the '883 Patent. Furthermore, Plaintiffs' reliance on the allegations asserted in Defendants' counterclaim to establish venue for the case is misplaced. "[I]n deciding a motion to transfer venue, the Court focuses on the claims made at the time of filing and

9

not on counterclaims brought by the party seeking transfer." RWIP, LLC v. Grand Image, Ltd., No. 1:11-CV-01855-MHS, 2012 WL 13008640, at *3 (N.D. Ga. May 21, 2012) (citing Motorola Mobility, Inc. v. Microsoft Corp., 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011)). Accordingly, the Court rejects Plaintiffs' claim that the locus of operative facts is in the Middle District of Georgia.

The ultimate objective of Plaintiffs' Complaint is to obtain a declaratory judgment that the Relevant Products created by Fine do not infringe on any claim of the '883 Patent held by Stoller Enterprises. (Doc. 1, ¶ 1). Resolution of this issue will require comparing the chemical composition of the patented product, which was created and developed in Houston, Texas, and the accused products, which were developed in either the United Kingdom or California. Notably, neither the '883 Patent nor the Relevant Products were designed or developed within the Middle District of Georgia.

Secondarily, Plaintiffs allege that the '883 Patent is unenforceable due to inequitable conduct committed during the prosecution of the Patent. The operative facts underlying this claim arose in either Texas, where the Patent was created, or in Washington, D.C., where the Patent was prosecuted. Because none of the conduct central to this action transpired in Georgia, this factor favors transferring the case to Texas.

The convenience of the witnesses also favors transfer. The witnesses relevant to the noninfringement case reside in multiple states and countries.

Ritesh Shah and Jerry Stoller, who developed the '883 Patent, reside in Houston, Texas. Jennifer Yancy, the attorney who prosecuted the Patent, is located in Alexandria, Virginia. The developers of the Relevant Products reside in either California or the United Kingdom. Vivid is in Minnesota. CJB is only one of the seven entities involved in this case who potentially has witnesses who may be inconvenienced by a transfer of venue. Otherwise, it is apparent that Houston, Texas provides a more central and accessible venue for any other witnesses who may be called upon to present testimony.

Similarly, Texas is a more convenient forum for six of the seven parties. CJB is the only party located in the Middle District of Georgia. And, despite Plaintiffs' argument to the contrary, Valdosta is not easily or conveniently accessible by flight. However, all three Defendants are located in Houston, Texas. Houston is centrally located and has the benefit of two major airports offering direct flights for those Plaintiffs located in the United Kingdom, California, and Minnesota. The only party inconvenienced by the transfer is CJB. The Court thus finds that this factor supports transfer.

The availability of process to compel the attendance of unwilling witnesses also weighs in favor of transfer. It is difficult to predict at this stage of the proceedings whether compulsory service may be necessary. But to the extent that it does, this Court's subpoena power extends only to those witnesses connected to CJB. However, as Defendants pointed out during oral argument,

"the witnesses we know are most relevant to the plaintiffs' claims are the Stoller witnesses," none of whom are in Georgia. (Doc. 33, p. 31). While Stoller's key witnesses are party employees and very likely will travel regardless of the location of this case, circumstances certainly could change. (Doc. 11, p. 19). Were these witnesses to sever their ties with Stoller, Texas would be the only jurisdiction that could compel their appearance.

Based on a totality of the circumstances, the Court finds that judicial economy and the interests of justice favor transfer to the Southern District of Texas. For reasons beyond the Court's control, this case has already been subject to lengthy delays. The Southern District of Texas, a common patent litigation venue, maintains local patent rules and procedures to manage patent cases effectively, which hopefully will expedite resolution of this case without further delay. Additionally, as was previously discussed, Defendants have raised a legitimate challenge to this Court's personal jurisdiction. Transferring the case to Texas will obviate the need for additional discovery and litigation to resolve that issue. See Kingdom Ins. Group, LLC v. United Healthcare Ins. Co., No. 7:10-CV-79 (HL), 2011 WL 2144716, at *3 (M.D. Ga. May 31, 2011).

### 3. Factors Against Transfer

The primary factor against transfer is the Plaintiffs' choice of forum. Generally, a plaintiff's "choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson, 74 F.3d at 260. But a plaintiff's

forum choice "has minimal value, or should be given less consideration . . . where none of the conduct complained of occurred in the forum selected by" the plaintiff. Eagle N. Am., Inc. v. Tronox, LLC, No. 407CV131, 2008 WL 1891475, at *5 (S.D. Ga. Apr. 29, 2008); see also Kingdom Ins. Grp., LLC, 2011 WL 2144716, at *3; Polyform A.G.P. Inc., 2010 WL 4068603, at *7. As previously discussed, the locus of operative facts in this case occurred largely in Texas, where the '883 Patent was developed, not Georgia. While CJB manufactured the Relevant Products alleged to infringe on the claims of the '883 Patent here in Georgia, the chemical composition of the Relevant Products developed by the Fine Plaintiffs in either the United Kingdom or California is what is central to Plaintiffs' noninfringement claims. Accordingly, the Court concludes that Plaintiffs' choice of forum does not outweigh the other factors that support transfer of this case to the Southern District of Texas.

## III. CONCLUSION

Weighing all the relevant factors, the Court finds that Defendants have met their § 1404(a) burden by showing that the Southern District of Texas is the more convenient forum for the parties and witnesses and that the interests of justice will be served by the transfer. The Court therefore **GRANTS** Defendants' motion to transfer. (Doc. 11). This case is transferred to the United States District Court for the Southern District of Texas, Houston Division. Plaintiffs' pending Motion to

13

Dismiss Stoller's First Amended Counterclaim of Indirect Infringement (Doc. 27) is transferred with the case.

**SO ORDERED** this 2nd day of March, 2020.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks